UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 1440 CDP |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Cynthia Dillon brings this action seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Section 205(g) of the Act, 42 U.S.C. §§ 405(g), provides for judicial review of a final decision of the Commissioner.  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Procedural History**

Plaintiff was born in 1958 and filed her application on April 23, 2018.  (Tr. 29, 136.)  She alleges she became disabled beginning October 18, 2017, because of  knee pain, back pain, throat cancer, high blood pressure, headaches, and nerve damage in her right arm.  (Tr. 163.)

Plaintiff's applications were initially denied on August 21, 2018.  (Tr. 48-66.) After a hearing before an ALJ on February 12, 2020, the ALJ issued a decision denying benefits on February 27, 2020.  (Tr. 10-19.)  On August 13 2020, the Appeals Council denied plaintiff's request for review.  (Tr. 1-9.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in his determination of her residual functional capacity (RFC) and in his evaluation of her subjective complaints of pain.  She asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #18-1) to the extent they are admitted by the Commissioner (ECF #19-1), as well as the additional facts submitted by the Commissioner (ECF #19-2) as they are not contested by plaintiff.  Additional specific

2

facts will be discussed as needed to address the parties' arguments.

## Discussion

A.    Legal Standard

To be eligible for disability insurance benefits under the Social Security Act,

plaintiff must prove that she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217

(8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555

(8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his physical

or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the

national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S.

137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is

engaged in substantial gainful activity.  If the claimant is working, disability benefits

are denied.  Next, the Commissioner decides whether the claimant has a "severe"

impairment or combination of impairments, meaning that which significantly limits

his ability to do basic work activities.  If the claimant's impairment(s) is not severe,

then he is not disabled.  The Commissioner then determines whether claimant's

impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404,

Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed

impairments, he is conclusively disabled.  At the fourth step, the Commissioner

establishes whether the claimant can perform his past relevant work.  If so, the

claimant is not disabled.  Finally, the Commissioner evaluates various factors to

determine whether the claimant is capable of performing any other work in the

economy.  If not, the claimant is declared disabled and becomes entitled to disability

benefits.

I must affirm the Commissioner's decision if it is supported by substantial

evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

Substantial evidence is less than a preponderance but enough that a reasonable person

would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145,

1147 (8th Cir. 2001).  "[Substantial evidence] means – and means only – such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation

marks and citations omitted).  Determining whether there is substantial evidence

requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome.  *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence.  *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence.  *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors,

dosage, effectiveness and side effects of medication, and functional restrictions).[2]
When an ALJ gives good reasons for the findings, the court will usually defer to the
ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).  However, the
ALJ retains the responsibility of developing a full and fair record in the non-
adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838
(8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in
substantial gainful activity since the alleged onset date of October 18, 2017.  (Tr. 12.)
The ALJ found that plaintiff had the following severe impairments: obesity, carpal
tunnel syndrome, DeQuervain's syndrome of the right wrist, mild left wrist
degenerative joint disease, and degenerative joint disease of the knees.  (Tr. 12.)  The
ALJ found plaintiff had the non-severe impairments of hypothyroidism, headaches,
hypertension, carotid body tumors, low back pain, and pain and weakness in her right
shoulder.  (Tr. 12-13.)  The ALJ determined that plaintiff's impairments or

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of
the term "credibility" to clarify that subjective symptom evaluation is not an examination of an
individual's character.  However, the analysis remains largely the same, so the Court's use of the
term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the
intensity, persistence, and limiting effects of symptoms are consistent with the objective medical
evidence and other evidence of record."  *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017);
20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir.
2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to
be applied" when evaluating a claimant's subjective complaints).

combination of impairments did not meet or medically equal a listed impairment in

20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13-14.)  The ALJ found plaintiff to

have the residual functional capacity (RFC) to perform sedentary work with the

following limitations:

> [Claimant can] lift or carry 20 pounds occasionally and lift 10 pounds
> frequently.  She can walk or stand 2 hours out of an 8-hour workday and
> sit for 6 hours in an 8-hour workday.  She can occasionally climb stairs,
> but never climb ladders, ropes, or scaffolds.  She can occasionally
> balance, stoop, kneel, crouch, or crawl.  The claimant is limited to
> frequent handling, fingering, and feeling.  She should avoid prolonged
> exposure to vibrating machinery, unprotected heights, and hazardous
> moving machinery.

(Tr. 14.)  The ALJ relied upon vocational expert testimony to support a conclusion

that plaintiff could perform her past relevant work as an office manager and insurance

clerk.  (Tr. 17-18.)  The ALJ therefore found plaintiff not to be disabled.  (Tr. 18.)

Plaintiff claims that this decision is not supported by substantial evidence

because the ALJ should have obtained an updated medical opinion to determine her

functional limitations instead of substituting his own opinion of the medical evidence.

Plaintiff also alleges that the ALJ improperly evaluated her subjective complaints of

pain.

C.    RFC

Plaintiff argues that the ALJ improperly substituted his own opinion of the

medical evidence and should have instead obtained an updated medical opinion

which addressed her ability to function in the workplace after August 23, 2018,

before fashioning his RFC.  RFC is defined as "what [the claimant] can still do"

despite her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  The ALJ must

determine a claimant's RFC based on all of the relevant evidence, including the

medical records, observations of treating physicians and others, and an individual's

own description of his limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir.

2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

On August 23, 2018, Frederic Simowitz, M.D., an agency medical consultant,

reviewed plaintiff's records and opined that plaintiff could perform a range of

sedentary work with frequent climbing of ramps and stairs; occasional climbing of

ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and crawling;

occasional balancing; and, avoiding concentrated exposure to hazards.  (Tr. 54-55.)

In reaching his conclusions, Dr. Simowitz reviewed plaintiff's medical records,

including her consultative examination performed on July 21, 2018 by Mara

Horowitz, M.D.  (Tr. 286-95.)

Plaintiff argues that the ALJ improperly relied on Dr. Simowitz's opinion when

fashioning her RFC because it was rendered a year before her hearing and failed to

consider more recent medical evidence, including an x-ray of her left wrist taken on

October 2, 2018, which showed no evidence of acute fracture, dislocation or bone

destruction, minimal degenerative changes, and a small subchondral cyst formation in

several of the carpal bones, as well as a nerve conduction study and electrophysiology performed on January 16, 2020, which should moderate right carpal tunnel syndrome, mild to moderate left carpal tunnel syndrome, and mild bilateral lower extremity sensory motor polyneuropathy with no evidence of myopathy.  (Tr. 307, 357.)  Plaintiff argues that the ALJ "is not qualified to determine how small subchondral cysts in the carpal bones, moderate right carpal tunnel syndrome, and mild to moderate left carpal tunnel syndrome affects functioning or whether or not those findings are consistent with disabling pain."  (ECF #18 at 4).  According to plaintiff, the ALJ was obligated to seek the opinion of a medical source as to how that evidence affected her ability to function in the workplace, and that in failing to do so the ALJ improperly substituted his own independent medical findings for that of a medical source when fashioning her RFC.

Plaintiff incorrectly argues that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses her specific functional limitations.[3]  Although the RFC is a medical question and must be supported by some

---

[3] To the extent plaintiff is arguing that a non-examining consultant's opinion cannot constitute substantial evidence, the Court notes that under the new regulations which govern claims such as this one, the ALJ is not required to give any particular evidentiary weight to any medical opinion, including plaintiff's treating physician.  *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.").  Instead, all "medical source" opinions are evaluated for their persuasiveness using two primary factors, consistency and supportability.  *See* 20 C.F.R. § 416.920c(a)-(c) (2017) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the

9

medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted).  Thus, the ALJ was not obligated to seek the specific opinion of a medical source as to plaintiff's functional limitations before fashioning her RFC, nor did he substantially err by considering Dr. Simowitz's opinion in his determination merely because it did not address all the medical evidence of record.

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).   Moreover, it is ultimately plaintiff's burden to establish her RFC, and she failed to carry this burden by producing any evidence that her RFC should be more limited because of her small subchondral cysts in the left carpal

---

treatment relationship, frequency of examinations, examining relationship,  purpose of the treatment relationship, and the extent of the treatment relationship,  specialization, and other factors); 20 C.F.R. § 416.920c(b)(2) (2017) (the ALJ was required to explain how he considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion).  Here, the ALJ found Dr. Simowitz's opinion persuasive as consistent with the other medical evidence of record and supported by his narrative report of the evidence considered.  (Tr. 18.)  Under these circumstances, the ALJ did not substantially err in relying on this opinion merely because Dr. Simowitz was a non-examining consultant.

bones, moderate right carpal tunnel syndrome, and mild to moderate left carpal tunnel syndrome.[4]  *See Hensley*, 829 F.3d at 932.

Here, the ALJ properly formulated plaintiff's RFC only after evaluating her subjective symptoms and discussing all the relevant evidence, including her testimony, the medical evidence (including Dr. Simowitz's opinion), and her daily activities.  After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform sedentary work, with modifications tailored to her credible limitations.  In so doing, he did not substantially err.

While the ALJ found Dr. Simowitz's opinion persuasive, he ultimately concluded that plaintiff's RFC should be more restrictive than Dr. Simowitz recommended based upon all the relevant evidence of record, including the more recent objective medical evidence of record.  The objective evidence considered by the ALJ included the October 2018 x-ray and the January 2020 nerve conduction study cited by plaintiff.  (Tr 16.)  The ALJ accounted for plaintiff's knee and wrist pain by precluding plaintiff from climbing ramps, stairs, ladders, ropes and scaffolds, and only occasionally stooping, kneeling, crouching, and crawling.  In addition, the ALJ limited plaintiff to frequent handling, fingering, and feeling.  (Tr. 14.)

---

[4] Plaintiff asked her primary care physician, Joy Stowell, M.D., to complete "disability paperwork" for her on April 26, 2018, but Dr. Stowell told her that her blood pressure would not qualify her for "something like disability" and told her to talk to her orthopedic surgeons instead.  (Tr. 238-39.) There are no functional capacity assessments in the record from any of plaintiff's treating physicians, including her orthopedic surgeons.

With respect to plaintiff's complaints of wrist pain, the limitations on plaintiff's abilities were consistent with the medical evidence of record which demonstrated only minimal degenerative changes in the left wrist, mild to moderate left carpal tunnel syndrome, and moderate right carpal tunnel syndrome.  (Tr. 307, 357.)   During her consultative examination by Dr. Horwitz, plaintiff exhibited 4/5 grip strength in her right hand and only mild difficulty manipulating with her hands. (Tr. 294.)  While plaintiff could not make a fist with her right hand, her effort was observed to be "fair."  (Tr. 292.)  Her hands and fingers appeared normal and she could button and unbutton a shirt, pick up and grasp a pen, write a sentence, lift, carry, and handle personal belongings.  (Tr. 289.)  Plaintiff had no joint swelling, erythema, effusion, or deformity.  (Tr. 289.)  Dr. Horwitz noted that plaintiff "gave fair to poor effort throughout the physical examination" and that her decreased muscle strength seemed "somewhat effort-dependent."  (Tr. 290-91.)  The ALJ concluded that these objective test results were inconsistent with disabling wrist pain, but he did restrict plaintiff to only frequent handling, fingering, and feeling to account for her credible limitations in her wrist.

The ALJ also noted that while plaintiff first received an injection in her right wrist in February of 2019 to treat her DeQuervain's syndrome (Tr. 344), she had otherwise not undergone any physical therapy, pain management, or surgery for her wrist pain.   Plaintiff's conservative course of treatment is inconsistent with

allegations of disabling pain and may properly be considered by the ALJ as one factor

in his assessment.  *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's

conclusions as to the severity of pain and limitations consistent with fact that

claimant was prescribed generally conservative treatment); *see also Cypress v.

Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (RFC's limitation on lifting no more than

20 pounds and frequent lifting and carrying of no more than 10 pounds sufficiently

accommodated claimant's manipulative limitations due to diagnosis of moderate to

severe bilateral carpal tunnel syndrome).

As for plaintiff's knee pain, the ALJ determined that the objective test results

were consistent with significant bilateral knee pain, but he ultimately concluded that

the record as a whole did not support plaintiff's allegations of disabling knee pain.  In

reaching his decision, the ALJ considered not only Dr. Simowitz's opinion but also

the results of Dr. Horwitz's consultative examination as well as plaintiff's more

recent imaging results and treatment history.

During her examination by Dr. Horwitz, plaintiff exhibited a slow, awkward,

antalgic gait favoring her right knee.  (Tr. 288.)  She walked without an assistive

device.  (Tr. 288.)  Plaintiff was unable to squat and rise from that position, but she

was able to rise from a sitting position without assistance.  (Tr. 289.)  Plaintiff had

some difficulty getting up and down from the exam table and was unable to walk on

heels and toes.  (Tr. 289.)  Tandem walking was abnormal and she could not stand or

hop on one foot bilaterally.  (Tr. 289.)  Plaintiff preferred to hold her leg in extension

and had a very minimal voluntary range of motion during examination of her knee,

refusing to flex it any more than 30 degrees.  (Tr. 290.)  Plaintiff also refused to lay

on her back so that Dr. Horwitz could perform straight leg raise testing and used only

limited effort when Dr. Horwitz attempted to perform the testing with plaintiff in the

seated position.  (Tr. 290.)  Dr. Horwitz believed that plaintiff had a greater range of

motion than what she exhibited and characterized her effort throughout the

examination as "fair to poor."  (Tr. 290.)  Plaintiff's back range of motion seemed

relatively well preserved.  (Tr. 290.)

In her Adult Function Report, plaintiff states that she uses a walking stick but

admits that it was not prescribed by a doctor.  (Tr. 190.)

Robert Orell, D.O., an orthopedist, examined plaintiff on February 26, 2019,

for evaluation of shoulder, knee, and wrist pain.  (Tr. 344.)  Dr. Orell found

patellofemoral arthralgia with crepitance, medial joint line pain, positive McMurray

testing, negative Lachman testing, good neurovascular status, and no effusion.  (Tr.

344.)  Dr. Orell took x-rays of plaintiff's right knee, which showed moderate to

advanced primary degenerative joint disease with varus deformity, and

chondrocalcinosis and were consistent with imaging done on August 21, 2018.  (Tr.

344.)  X-rays of plaintiff's left knee showed mild primary degenerative joint disease.

(Tr. 344.)  Dr. Orell sought authorization to administer a Synvisc One injection to her right knee.  (Tr. 344.)

X-rays of plaintiff's knees on March 25, 2019, showed mild osteopenia in both knees, with chondrocalcinosis more pronounced on the right knee.  (Tr. 330.) Plaintiff's right knee showed slightly more joint space narrowing medially and osteophyte formation.  (Tr. 330.)  No fracturing, dislocations, or joint effusion was detected.  (Tr. 330.)

After reviewing the medical evidence and summarizing plaintiff's testimony, the ALJ fashioned an RFC more restrictive than Dr. Simowitz's recommendations to account for plaintiff's credible functional limitations with respect to her knees.  The ALJ precluded plaintiff from climbing ramps, stairs, ladders, ropes and scaffolds, and determined that she should only occasionally stoop, kneel, crouch, and crawl. However, the ALJ concluded that greater restrictions were not necessary given plaintiff's limited treatment history, which did not include prescription pain medications or physical therapy.  *See Pierce v. Kijakazi*, --F.4th --, 2022 WL 38473, at *3 (8th Cir. Jan. 5. 2022) (ALJ properly relied upon relatively conservative course of treatment to deal with pain when fashioning RFC).  The ALJ also properly considered the fact that plaintiff did not follow through with prescribed treatment, as she was recommended for right knee replacement surgery but declined, stating that she "[didn't] want this."  (Tr. 238.)  *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th

Cir. 2015) (ALJ properly considered fact that claimant declined recommended surgical intervention as evidence that carpal tunnel syndrome was not disabling).

Plaintiff points to complaints of pain in her medical records as evidence that the ALJ failed to adequately evaluate her RFC.  However, remand is not required merely because plaintiff may disagree with the ALJ's weighing of the evidence or can point to some evidence in the record which may support her position.  *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).  Although plaintiff believes that the ALJ should have assessed the medical evidence differently to support greater limitations or obtained an additional medical opinion, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC.  *Hensley*, 829 F.3d at 934.  It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions.  *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).  Under these circumstances, the ALJ did not err in failing to obtain a more updated medical opinion before fashioning plaintiff's RFC, and his decision is entitled to deference.

The ALJ evaluated all of the medical evidence of record and adequately explained his reasons for the weight given this evidence in a manner consistent with the new regulations.  The ALJ did not simply adopt a sedentary RFC or Dr. Simowitz's opinion wholesale, but rather substantially restricted plaintiff's RFC based on her credible limitations of record.  Good reasons and substantial evidence in

16

the record as a whole support the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress*, 854 F.3d at 1021 (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

Because substantial evidence on the record as a whole supports the ALJ's RFC determination, the decision of the Commissioner must be affirmed.

D.      Subjective Symptom Evaluation

Here, in addition to consideration of the medical evidence, the ALJ properly formulated plaintiff's RFC only after evaluating her subjective symptoms and discussing the relevant evidence, including her testimony and daily activities.  After consideration of all this evidence, the ALJ found that her allegations were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 15.)  Plaintiff argues that the ALJ erred in evaluating her subjective complaints of pain by mischaracterizing the evidence.  When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole. 20 C.F.R. § 404.1529(c); SSR 16-3p.  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  *Pearsall*, 274 F.3d at 1218.  I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).  When determining the credibility of a

17

claimant's subjective complaints, the ALJ must consider all evidence relating to the
complaints, including the claimant's daily activities; the duration, frequency and
intensity of the symptoms; any precipitating and aggravating factors; the dosage,
effectiveness and side effects of medication; and any functional restrictions.  20
C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th
Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty of the court is to ascertain
whether the ALJ considered all of the evidence relevant to the plaintiff's complaints
of pain . . . and whether the evidence so contradicts the plaintiff's subjective
complaints that the ALJ could discount his or her testimony as not credible."
*Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

Here, the ALJ summarized plaintiff's testimony regarding her daily activities
and subjective allegations of pain and found plaintiff's statements about the
intensity, persistence, and limiting effects only partially consistent with the evidence
of record.  The ALJ acknowledged plaintiff's reported symptoms, including pain,
and went on to weigh these allegations against the evidence of record as required by
20 C.F.R. § 404.1529(c)(3).  The ALJ considered how plaintiff's obesity aggravated
her symptoms.  (Tr. 16.)  He considered her use of a walking stick, but noted that it
was not prescribed.  (Tr. 15.)  The ALJ was not required to fully credit all of

plaintiff's assertions regarding her extreme limitations[5] given that the medical evidence of record supported the ALJ's findings and was properly considered by the ALJ as one factor when assessing plaintiff's credibility and evaluating her subjective complaints of pain.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).   As detailed above, after summarizing the medical evidence the ALJ properly concluded that plaintiff's subjective complaints of pain were of limited credibility because they were not supported by objective medical evidence of record, an important factor for evaluating a claimant's credibility.  *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995).

The ALJ properly considered the fact that plaintiff's conservative treatment record, which did not include pain medications[6] or physical therapy, did not support plaintiff's subjective allegations of disabling pain.  *See Pierce,* --F.4th --, 2022 WL 38473, at *3.[7]

---

[5] Plaintiff testified that she was severely limited in her daily activities, claiming that she could not lift a gallon of milk, sit more than one hour at time, sleep more than two hours, drive, stand, vacuum, grocery shop, or perform personal care chores, such as toileting, without assistance.  (Tr. 26-43.)

[6] Although plaintiff claims that she was "unable" to take pain medications as an explanation for why she was not on pain medication, she actually testified that she could not tolerate oral pain medication but that she could take it if administered in other ways, such as by suppository.  (Tr. 35.)

[7] The ALJ did not, as plaintiff suggests, find that she refused to participate in prescribed physical therapy.  Rather, he mentioned the lack of prescribed physical therapy as an indicator of the conservative nature of her treatment.

The ALJ also properly considered the fact that plaintiff declined right knee replacement surgery when recommended because she "didn't want this."   In evaluating plaintiff's subjective complaints of pain, an ALJ may properly consider the claimant's failure to comply with recommended treatment.  *See Cypress*, 807 F.3d at 951; *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

Plaintiff objects to the ALJ's characterization of the evidence, arguing that he should have reached a different decision about her subjective complaints of pain. Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing her daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record.  In so doing, he did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole.  *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

The ALJ expressly acknowledged that plaintiff was experiencing pain, but concluded, after evaluating the entirety of the record, that plaintiff's pain was not so severe as to be disabling.  Where, as here, an ALJ seriously considers but for good reasons explicitly discounts a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination.  *Johnson v. Apfel*, 240 F.3d 1145, 1148

20

(8th Cir. 2001).  The ALJ evaluated all of the evidence of record and adequately explained his reasons for the weight given this evidence.   Substantial evidence in the record as a whole supports the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

### Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled.

Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of January, 2022.